EUGENE WOOLSEY

*v.*

VIRGINIA M. WOOLSEY et al.

[Decided November 26th, 1912.]

1. Where a testator leaves his estate in trust for a grandson and provides that, in case such grandson dies before majority and without issue, the estate should be divided as though testator died intestate on the date of the will, on the death of such grandson before majority the trustees should divide the estate as though the testator had died intestate on the date of the will, and, if no other descendants existed at the date of the will, the next of kin of the deceased grandson should get the estate, taking not by intestacy, but by gift.

2. Testators have wide power and discretion in laying down rules to be followed to find out who are to be the takers of their bounty upon the happening at a remote time of various more or less remote contingencies.

---

Bill by legatee for an accounting of executors and trustees, and the recovery for the estate of moneys paid by executors to defendant Virginia M. Woolsey, the establishment in favor of complainant of an "executory devise" of property under the will, &c.; and cross-bill by executors asking for instructions in regard to the payment of moneys in their hands.

Heard on pleadings and testimony stipulated into the cause from prior case between the parties in the court of errors and appeals.

*Mr. Maximilian T. Rosenberg,* for the complainant.

*Mr. Charles L. Carrick,* for Woolsey and Northrop, executors.

*Mr. Randolph Perkins,* for defendant Virginia M. Woolsey.

STEVENSON, V. C.

It is agreed by counsel that all the questions raised by the pleadings in this cause have been disposed of with the exception

of the one herein to be considered. The solicitors of all parties interested have also by an ample stipulation submitted the said question to the determination of this court, without regard to the technical form of the pleadings.

The subject-matter of this controversy is presented by the pleadings and the sharp question argued by counsel, and submitted as aforesaid, is distinctly put to the court in the cross-bill filed by the executors, to which cross-bill the defendant Virginia M. Woolsey alone was called upon to answer. The stipulation signed by the solicitors of all the parties in this cause makes the decision of the issue presented by the cross-bill and answer thereto of the defendant Virginia M. Woolsey binding upon all the parties.

The testator, Charles A. Woolsey, resident in Hudson county, New Jersey, made his will June 14th, 1894, and made a codicil, which throws some light upon this controversy, on November 20th, 1894.

The testator died July 4th, 1895, leaving him surviving as his next of kin, his daughter Alice Woolsey, now deceased, his infant grandson Herbert W. Woolsey, now deceased, and also leaving a sister of the whole blood, Sarah A. Newell, and two brothers of the half blood, Frank Woolsey and Eugene Woolsey; and also leaving a daughter-in-law, the defendant Virginia M. Woolsey, widow of the testator's deceased son Herbert and mother of the said infant grandson Herbert W. Woolsey. The family relations of the testator were- the same at the time of the making of the will and at the time of his decease. There seem to be no other facts or circumstances existing at the time of the making of this will which throw any light upon the question of construction to be decided in this cause, excepting that the testator was a man of substantial fortune, a large part of which was invested in a paint and oil business, which subsequently failed. The will, after making certain comparatively small bequests, which have a bearing upon the controversy in this cause to be hereinafter noticed, gives, devises and bequeaths all the residue of the testator's estate of every kind to his executors and trustees, and the survivors and survivor of them, their heirs and assigns in trust, nevertheless, for certain specified uses

and purposes. It may well be noted here that the entire residue of this estate, after taking out legacies which constituted a small proportion of it, is vested in these executors and trustees, and thereupon the further provisions of the will are occupied with directions as to the parties to whom the estate shall be paid by these trustees. The executors hold the residue of the estate under the terms of this will, and they are to pay it out as the will directs. The takers of the fund do not take by intestacy.

The residue constituting the trust fund was disposed of for the support and benefit of the testator's daughter Alice Woolsey and his grandson Herbert W. Woolsey. Provision was made for the death of this daughter and grandson before the grandson should arrive at the age of twenty-one years, which provision shows that the testator contemplated the probability of a considerable period of years during which his estate would be held in trust, and for the distribution of it at the termination of the trust among his descendants, if any should then be surviving. The latest possible time for distribution was fixed at the time when the grandson Herbert should become of full age, which, in case the grandson reached that age, would be many years after the testator made his will and framed this trust.

Subparagraph (8) of the third paragraph of the will is as follows:

"(8) In case of the death of said Herbert W. Woolsey and Alice M. Woolsey, before the division herein provided for, and without one or each of them leaving lawful issue, and no directions for such contingencies being herein specifically set forth, then such share or shares shall be divided in the same manner as though I had died intestate, and a resident of the State of New Jersey, upon the day of the date of this instrument."

It is claimed on behalf of the next of kin of the testator, the complainant, Eugene Woolsey, the defendants Frank Woolsey and Kitty May Wadsworth, succeeding by will to any title or interest of her deceased mother, Sarah A. Newell, that this clause of the testator's will should be read as if after the words "I had died intestate" the words "Herbert and Alice being then dead" had been interpolated.

It is claimed, on the other hand, on behalf of the defendant

Virginia M. Woolsey, that no such proposed interpolation is proper or necessary in order to reach the plain meaning of the testator, and the exact force of the language which he employed; and that the true construction of this provision gives to the defendant Virginia M. Woolsey, as the next of kin of her deceased infant son Herbert, one-half of the fund in dispute concerning the payment of which the trustees ask for instructions from this court.

In my judgment, the construction contended for on behalf of Mrs. Virginia M. Woolsey is the correct construction, while the construction contended for on behalf of the next of kin of the testator can only be established by a violent and unjustifiable wrenching of the testator's words resulting in the establishing, not of the testator's will, but of some will which this court may think the testator might have made if he had given due thought to the business which he had in hand.

1. The vice, it seems to me, which inheres in the whole argument on behalf of the next of kin, lies in the fact that the construction for which they contend ignores the force and significance of the provision which makes it necessary, in determining who are the takers, to consider the date of the execution of the will, and not the date of the decease of the testator. The will does not say that at the probably remote period, which the testator contemplated as the time for distribution, if all the trusts had been performed and the trust provisions had become inoperative, the estate should go as if he had died intestate.

What the testator does is to lay down a rule, whether a wise or a reasonable rule we have no right to inquire, but a perfectly clear rule according to which the takers of this trust estate are to be ascertained in the event of the decease of the principal beneficiaries without leaving issue. The testator might have made no provision for such a contingency in which case his next of kin would take by intestacy—take something undisposed of by the will. But the testator disposes of his entire estate. He vests it in his executors in trust and provides for the contingencies under which the estate is to be paid out to different beneficiaries, and contemplating perhaps as a remote possibility that both his daughter and his grandson would die before the grandson had

reached the age of twenty-one years, and without leaving any issue, he then lays down a rule by which the trustees are to find the person or persons to whom they are to pay over the "share or shares" which otherwise would have gone under this will to the testator's descendants or descendant.

A direction in a will made by a testator who could not know whether he would live one year or ten years, providing in the event of certain contingencies occurring for the distribution of a trust fund by the payment thereof "in the same manner as though" such testator had died intestate and a resident of the State of New Jersey upon the day of the date of the will, makes a direction for the payment of money which involves no case of intestacy and in my judgment gives rise to little if any difficulty in its application. The takers under this rule are found by inquiring where the fund would have gone if the testator had died intestate on the arbitrary day fixed as the test. The ultimate question, however, is not where in the case stated the fund would have gone; the practical question is where does the fund now go from these trustees who hold it. The two questions, however, follow each other. Having ascertained in answer to the first question where the fund would have gone in case the testator had died intestate at the date of the execution of his will, it becomes necessary to trace any other devolutions to which the fund or any part thereof would have been subjected owing to events which occurred subsequent to the test date. If the testator had died intestate at the date of the execution of his will, the estate which he put in trust would have gone in equal shares to his daughter Alice and to his grandson Herbert. The testator when he made his will certainly knew that both his daughter and his grandson were then alive, and presumably knew that they would take his entire estate if he then immediately died intestate. I am unable to adopt the view of counsel for the next of kin that we must suppose that the mind of the testator was so occupied with the possible distribution of his estate years after he made his will, and after both his daughter and his grandson were dead without leaving issue, that when he laid down this test by which the takers of the fund were to be ascertained, he misspoke himself and did not make his next of kin, who were alive before him,

the hypothetical *stirpes* through whom the takers were to be ascertained, but that he made his two brothers and his sister such *stirpes.*

It must at all times be kept in mind that this estate is in the hands of trustees by whom distribution is to be made, and we are to find from this will directions as to whom these trustees are to make the payment. They make the payment by following the rule for the ascertainment of the payees laid down by the testator.

Now, then, if the testator had died when he made his will intestate, which is not the case, the fund in question would have gone to Alice and Herbert, which is not the case, and which manifestly the testator could not have contemplated as a possibility, because he was providing for a condition of affairs after the death of both these persons. But if these two persons had received equal shares by intestacy, then when Herbert died his mother, the defendant Virginia M. Woolsey, would have taken his one-half share by intestacy as his next of kin, while if Alice had received her one-half then upon her death unmarried and intestate, which followed the death of her nephew Herbert by a few years, her one-half would have passed to her next of kin, to wit, the defendants Frank Woolsey and Eugene Woolsey, and Sarah A. Newell, whose interest is represented in this case by her general legatee, the defendant Kitty May Wadsworth.

It may be urged that the recognition of such an artificial and peculiar rule for the ascertainment of the takers of this trust fund might lead to most extraordinary results which the testator never could have contemplated. This same vicious argument has perhaps sometimes prevailed so as to cause courts to make and enforce wills which they think testators ought to have made and would have been liable to make if they had known this, that, or the other thing, or thought of this, that or the other contingency.

Where language is employed in a will like that which is now under consideration, the question arises, or may arise, whether all possible forms of the devolution of property may not sometimes have to be examined and considered, not in order to trace title to the fund which is to be paid under the will, but to ascertain the person to whom such payment is to be made. A general assignment for the benefit of creditors might perhaps have to be

given force and effect not as having actually passed title to the fund in question, which is held by trustees, let us suppose, as in this case, and is paid out in execution of the will, but to lead up to and indicate with certainty the beneficiary for whom the trustees are making search. Whether in this sort of a case theoretical devolutions of property other than by will or by intestacy are to be dealt with differently in their relation to the testator's intention, and the testator's rule for finding the beneficiary, it is unnecessary in this case to discuss or determine. It may be conceded that if, under language like that employed in subparagraph (8) of this will, the beneficiary is always to be found by assuming a fictitious vesting by intestacy and subsequent transfers by any and all forms in which the hypothetical vested interest, if it had been a real interest, would, in fact, have passed perhaps through a series of owners by virtue of wills, deeds, escheats, &c., oftentimes results would be reached which in fact the testator never contemplated. In such cases a good deal can be said about enforcing the intention of the testator, and also about making a will for him which he did not make but which a court may conclude he would have made if he had thought about the matter.

Testators undoubtedly have wide power and discretion in laying down rules for executors and trustees and courts to find out who are to be the takers of their bounty upon the happening at a remote time of various more or less remote contingencies. In this present case, in my opinion, there is no temptation to think out a will for the testator which the court may suppose he would have made, but which in fact he did not make, because in the hypothetical or fictitious transfers which must be taken into consideration in determining who shall take under the terms of this will, or in other words, to what persons these trustees are to make payment, we have the very simple cases of a mother taking the personal estate of her deceased son by intestacy, and a daughter taking the personal estate of her deceased mother under a will making her her mother's universal legatee, and it may be added, that for all that appears if no will had been made this daughter would have taken the mother's estate by intestacy.

2. At this point we may observe that if the contention on behalf of the next of kin is correct, we still have precisely the same

artificial rule assuming hypothetical devolutions of property in order to ascertain the actual devolution to be recognized and effectuated under this peculiar subparagraph (8). We still have not certain named, ascertained beneficiaries whom the testator says shall take, but a mere arbitrary rule for ascertaining in the light of subsequent events how the takers are to be found. Adopting, *arguendo,* the proposed interpolation, we reach the result that in the hypothetical case put by the testator, the estate in question would have devolved not upon Alice and Herbert, but upon the testator's brothers and sister. Now, suppose that Mrs. Newell, who died, in fact, after both Herbert and Alice, had died at some time after the death of the testator, but before the death of either Alice or Herbert. In such case the defendant Mrs. Wadsworth, it seems to me, would take one-third of the estate under the terms of this will, and not under the terms of her mother's will, although the mother's will constitutes a necessary part of the hypothetical devolution of this third share which is to be taken as a guide in ascertaining the actual devolution of that third share under this testator's will.

3. The whole scheme of this will strongly supports the view that the testator practically adopted his daughter-in-law as a daughter, and contemplated that she might through her son, the testator's grandson, receive a substantial share of his estate. The will exhibits plainly how much larger a place in the testamentary plans and purposes of this testator was occupied by his daughter-in-law Virginia than by any of his collateral relatives. This daughter-in-law was an absolute participant, to a very large extent, in the benefactions of this will, while these collateral relatives were practically ignored.

The testator's only sister, Mrs. Newell, receives a legacy of $5,000, while the daughter-in-law, Mrs. Virgina M. Woolsey, receives a legacy of $10,000, and after disposing of certain household goods and personal articles, evidently of little value, the great bulk of the testator's estate is put in trust, and the provisions of the trust are for the benefit of the testator's daughter, grandson and this daughter-in-law, Mrs. Virginia M. Woolsey, to the exclusion of his brothers and sister. Mrs. Woolsey is provided with an annuity of $2,000 a year, which seems to be sub-

stantially the same as the sum of the annuities left for the daughter Alice. The testator apparently contemplated that if his grandson Herbert became of age so as to receive his share of the *corpus* of the estate, his daughter-in-law, the mother of Herbert, would naturally be thereby provided for. In the codicil the testator expressly provides that the annuity to Virginia shall cease in case of her marriage or the coming of full age of her son Herbert, and then proceeds to direct that if Herbert shall die before reaching the full age of twenty-one years, then Virginia's annuity is to be continued until her death or marriage. These provisions for Virginia's support terminating when her son Herbert should arrive at twenty-one years of age and receive a substantial fortune from his grandfather, which would enable him to properly care for his own mother, strongly suggest the view that the testator knew precisely what he was doing when he established his daughter Alice and his grandson Herbert as what I have called hypothetical *stirpes* through whom as the supposed equal owners of his estate at the time of the execution of his will the devolution of that estate would be ascertained in after years in case both Alice and Herbert should die without leaving issue before Herbert reached the age of twenty-one years.

That the testator actually contemplated situations and conditions in which his daughter-in-law might receive through her son a large portion of the testator's estate, is indicated by another important provision. In the event of the death of Alice without issue the entire estate became vested in Herbert, and the testator recognized that this might occur while Herbert was an infant and incapable of making a will, and therefore he expressly directs that in such case the estate should be managed by his executors until Herbert became of full age. How can we escape the conclusion that the testator, aided, as he no doubt was, by counsel in drawing this portion of his will, recognized the possibility by no means remote, that his entire residuary estate, comprising the bulk of his fortune, might pass by intestacy from his grandson Herbert to Herbert's mother, the defendant Mrs. Virginia Woolsey. There seems to be little force in the argument that the testator did not consider the possible devolution of one-half of the residuary estate upon this favored daughter-in-law under the pro-

visions of this will, and also was strangely blind to the obvious contingency that under the will the entire estate might become vested in an infant from whom the favored daughter-in-law might receive the whole by intestacy.

4. The whole argument on behalf of the next of kin seems to me to lose force if we consider this very probable situation which might have occurred, and which the testator presumably contemplated, viz., that before the death of Alice and Herbert the two brothers and the sister had all died. Is there any semblance of reason or common sense in the claim that these dead collaterals should be taken as the hypothetical *stirpes,* displacing the daughter and grandson, who were alive and in the contemplation of the testator when he made his will?

In case such a substitution *were* made, the favored daughter-in-law would be excluded from the distribution under consideration, while a husband of the testator's sister and a large number of strangers to the testator, including charitable institutions, might stand as claimants.

5. The case of *White* v. *Springett (1869),* *4 Ch. App. 300,* while I think strongly supporting the views herein expressed, is particularly valuable on account of the opening statement in the opinion of Lord-Justice Selwin, which is as follows (at *p. 302*) :

"I accede to the argument on behalf of the appellants to this extent, that the current of modern decisions, and especially those in the house of lords, has set strongly in favor of adhering strictly to the literal meaning of the words used by the testator in each case, without alteration or addition, and, as far as possible, *without reference to other cases or other wills."*

Lord-Chancellor Halsbury, in a series of recent cases in the house of lords, has protested against the tendency to follow the construction of phrases in one will as a precedent for the construction of other wills, and of working out a will which courts or lawyers may think the testator would have made "if he had had the whole circumstances present to his mind." *Higgins* v. *Dawson (1902), A. C. 1, 6; Kingsbury* v. *Walter (1901), A. C. 187, 188.*

See, also, the remarks of Lord Herschel in *Hickling* v. *Fair (1899), A. C. 15, 25.*

So far as authorities and precedents may be resorted to for help in this case, perhaps the most useful decision is that of the house of lords rendered in 1860 in the case of *Bullock* v. *Downes, 9 H. L. C. 1; 11 English Reprint 627.* See, also, *1 Jarm. Wills (ed. of R. & T.) 682.* In *White* v. *Springett, supra,* the supposititious intestacy which was to be assumed in order to find the takers of the estate, was placed, not at the time of the death of the testator nor at the date of the will, but at the death of certain persons named who, in fact, died after the testator. To make the rule for finding the beneficiaries more artificial, the will required that in ascertaining the supposed next of kin of the testator at the supposed time of his death one grandchild should be excluded from consideration, and in fact at the supposed date this excluded grandchild was the testator's sole next of kin. The court followed the suppositions and fictions of the will pointing out that the takers were not the testator's next of kin at the time of his death, but that "he creates for himself an arbitrary class to be ascertained in a particular manner, and the question of the persons who are to constitute that class is what we have to look to."

6. Where, under the words of a will, the vesting of an estate upon a remote contingency is in the next of kin of the testator, or is to be ascertained by supposing that he died intestate, there may be good grounds for holding in some cases that the testamentary language effects no gift, but constitutes merely a declaration that in case his main purposes are defeated, for instance, by the death of all his direct descendants, that he has no further testamentary purpose to accomplish and is content to die intestate as to the estate or the residue of the estate of which his attempted disposition has been thwarted by time and death. No such view, however, seems tenable when the testator disposes of his estate upon the happening of a more or less remote contingency as if he had died intestate upon some arbitrary date such as the date of his will or the date of an event which may happen before or after his own decease, on which assumed date he did not, in fact, die. In every such case a gift must be found to have been made by the will to a donee who remains unknown until the contin-

gency happens and then must be ascertained by applying an artificial rule as was done in *White* v. *Springett, supra.*

Of course, if the assumed date for the hypothetical intestacy is the date of the will, or any date prior thereto, the testator's next of kin on such assumed date are known to him, as was true in this case. But in such case there seems to be no reason why, if the gift of the contingent interest is made to these next of kin, they should not be named instead of indicating them by a clumsy circumlocution. The purpose of the suppositions and the fiction of intestacy seems to be to keep the takers of the estate upon the happening of the contingency unknown and indeterminate until such contingency shall happen.

7. It may be deemed by some minds that the effect of what the testator in this case did was to vest the contingent interest in question in his daughter-in-law and grandson, notwithstanding the circumlocution which he employed. This would not be, as was I think erroneously suggested in the argument, a gift to deceased persons, but a gift to living persons of a contingent estate which, from the nature of the contingency, they could never have in possession. It is unnecessary in this case to discuss this theory of construction, because it leads to the same result which is reached if we hold that the will makes no gift of the contingent interest to the daughter and grandson, but merely lays down an artificial and arbitrary rule by which the donee theretofore being undetermined is to be ascertained upon the happening of the contingency.

8. It is understood that in accordance with the arguments of counsel and in harmony with the stipulation signed by the solicitors of all the parties, this decision is confined to the force and effect of the paragraph of the will above set forth. The defendant Virginia M. Woolsey, in her answer to the cross-bill, claims a balance of $8,000 due on her legacy of $10,000, but whether such a claim could be substantiated in this case has not been the subject of any argument, and in accordance with the stipulation I have given no consideration to it. If I have been misled in regard to this matter by the statements and stipulation of counsel, the matter may be disposed of after further argument upon settlement of the decree.

9. A decree will be advised instructing the trustees to pay one-half of the fund in dispute to the next of kin of the testator's daughter Alice, and the other half to the next of kin of the testator's grandson Herbert.